UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SOUTHERN MARSH COLLECTION, LLC CIVIL ACTION

VERSUS

DIXIE DECOYS, LLC NO. 24-00905-BAJ-EWD

# RULING AND ORDER

Before the Court is Defendant Dixie Decoys, LLC's ("Dixie Decoys") **Motion to Dismiss the "Symbol Misuse" Claims Asserted in Plaintiff's Second Amended Complaint (Doc. 84)**. Plaintiff Southern Marsh, LLC ("Southern Marsh") opposes Defendant's Motion. (Doc. 89). Defendant filed a Reply Brief. (Doc. 91).

For the reasons stated herein, Defendant's Motion is **DENIED**.

## I. FACTUAL BACKGROUND

This is a trademark and copyright infringement case. Plaintiff Southern Marsh designs and sells a variety of outdoor apparel and accessories—such as hats, t-shirts, and jackets, among many other products—in brick-and-mortar boutiques, retail stores throughout the United States, and to consumers globally via its website. (Doc. 80 ¶¶ 6-7). Southern Marsh displays its duck-style logo ("Southern Marsh Logo") in these locations and on numerous items of Southern Marsh branded apparel and accessories. (*Id.* ¶ 8). Southern Marsh claims this logo "has come to be known as a source identifier for Southern Marsh's high-quality products." (*Id.*).

Southern Marsh owns several U.S. Trademark Registration Certificates for its family of trademarks including the Southern Marsh Logo, and they also use the registered trademark "PRESERVE THE TRADITION" on many of its products. (*Id.* ¶¶ 11-13). Southern Marsh claims it has established considerable trademark rights, brand recognition, and consumer goodwill in the Southern Marsh Logo, Registered Southern Marsh Marks, and its PRESERVE THE TRADITION Mark (collectively, the "Southern Marsh Marks"). (*Id.* ¶ 14). Southern Marsh has been using the Southern Marsh Marks continuously in commerce in connection with its goods since 2008. (*Id.* ¶ 15).

Southern Marsh alleges that Defendant Dixie Decoys "began marketing, distributing, and selling products in the United States" using a registered trademark that closely resembles Southern Marsh's registered trademarks in a manner that is likely to cause consumer confusion. (*Id.* ¶ 17). Dixie Decoys markets and sells a variety of outdoor apparel that is allegedly similar in appearance to Southern Marsh's product line, and to a similar class of customers as Southern Marsh. (*Id.* ¶¶ 18-21). According to Southern Marsh, many of Dixie Decoys' products display a logo "featuring a rightward-facing duck sitting in repose" that allegedly resembles the Southern Marsh Logo. (*Id.* ¶ 20). Southern Marsh refers to this as the "Infringing Duck Logo". (*Id.*). In addition to the Infringing Duck Logo, Southern Marsh alleges that Dixie Decoys uses the marks "Preserve the Sporting Tradition" and "Preserve Your Sporting Tradition" to promote products on the internet in a manner that infringes Southern Marsh's well-established rights in its "PRESERVE THE

TRADITION" mark. (*Id.* ¶ 22). Collectively, Southern Marsh refers to these phrases, as well as the Infringing Duck Logo, as the "Infringing Marks." (*Id.*). Southern Marsh alleges that "[b]ecause of the similarities" between the Southern Marsh Marks and the Infringing Marks, "consumers are likely to be confused and believe that Dixie Decoys' products are put out by, affiliated with, sponsored by, approved by, associated with, or licensed by Southern Marsh when they are not." (*Id.* ¶ 23).

Relevant to the instant Motion, Southern Marsh further alleges that "Dixie Decoys misrepresents the nature of its registered trademark rights to the public by using the ® symbol on classes of products for which it owns no federal trademark registration." (*Id.* ¶ 31). It appears undisputed that "Dixie Decoys owns U.S. Trademark Registration No. 5,386,013 for the Infringing Duck Logo" and that "a principal of Dixie Decoys owns a registration for the mark DIXIE DECOYS," but that these registrations are limited to "CLASS 28: Waterfowl hunting decoys," and that "Dixie Decoys owns no federal [trademark] registration for clothing or apparel items or accessories." (*Id.* ¶¶ 32, 34; Doc. 84-1 at 7, n.1). Southern Marsh alleges that despite this, Dixie Decoys uses these marks for apparel items, "caus[ing] harm to both the consuming public and Southern Marsh." (Doc. 80 ¶¶ 32-35).

## II. PROCEDURAL HISTORY

On September 4, 2024, Southern Marsh filed a petition against Dixie Decoys in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana. (Doc. 1-1). Thereafter, Dixie Decoys removed the suit to this Court asserting subject matter jurisdiction under 28 U.S.C § 1332(a)(1) and filed a

counterclaim against Southern Marsh. (Docs. 1, 18). Southern Marsh amended its pleadings to remove claims of fraud and filed the operative Second Amended Complaint ("the Complaint") on October 24, 2025. (Docs. 78, 80). Dixie Decoys responded with an Answer and First Amended Counterclaim ("the Counterclaim"). (Doc. 85). The Complaint alleges the following causes of action against Dixie Decoys: (1) Trademark Infringement in violation of 15 U.S.C. § 1114; (2) Federal Common Law Trademark Infringement, Unfair Competition, Symbol Misuse, and False Designation of Origin in violation of 15 U.S.C. § 1125(a); (3) Common Law Trademark Infringement; (4) Trademark Infringement in violation of La. R.S. 51:222; (5) Trademark Dilution in violation of La. R.S. § 51:223.1; (6) Unfair Trade Practices in violation of La. R.S. § 51:1409; and (7) Copyright Infringement in violation of 17 U.S.C. § 501. (Doc. 80 at 16-24). Dixie Decoys now moves to dismiss Southern Marsh's "Symbol Misuse" (or, false advertising)[1] claims asserted in the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of standing, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 84).

## III. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Products Liab. Litig,* 688 F.3d 281, 286 (5th Cir. 2012). Under Rule

[1] In the briefing, the Parties appear to use "symbol misuse" and "false advertising" as interchangeable terms, though the symbol misuse claim in Count Two of the Complaint extends to claims beyond false advertising. The Court construes Dixie Decoys' Motion to be challenging Southern Marsh's claims of false advertising under 15 U.S.C. § 1125(a)(1)(B), found in Count Two, and the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq.* ("LUTPA"), found in Count Six, *only*. (Doc. 80 ¶¶ 43-51, 72-80). In disposing of the instant Motion, the Court will use the term "false advertising" to refer to the claims in dispute.

12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *Id.* (quoting *Home Builders Assn. Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) attack before addressing any challenge on the merits of the claims. *Id.*

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). That standard seeks to determine whether "a complaint ... contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At 678 (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Ramming v. United States*, 281 F.3d 158, 161

(5th Cir. 2001) (holding that a court ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts").

## IV. DISCUSSION

Dixie Decoys seeks to dismiss Southern Marsh's false advertising claims for lack of standing under Rule 12(b)(1), contending that Southern Marsh fails to allege a concrete harm that is fairly traceable to the challenged action. (Doc. 84-1 at 4). Additionally, Dixie Decoys alleges Southern Marsh fails to state a claim under Rule 12(b)(6) because, it argues, its statements are not literally false, and because Southern Marsh has not pleaded actual consumer deception, which is required for a false advertising claim based on a "true-but-misleading" statement under controlling precedent. (Doc. 91 at 5-7); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). The Court will begin with Dixie Decoys' 12(b)(1) standing challenges and then turn to the sufficiency of Southern Marsh's pleadings under 12(b)(6).

### A. Jurisdictional Challenges Under Rule 12(b)(1)

Dixie Decoys argues that the Court lacks jurisdiction over Southern Marsh's false advertising claims because Southern Marsh lacks standing. (Doc. 84-1 at 4). "Under Article III of the Constitution, federal courts are confined to adjudicating 'cases' and 'controversies.'" *Lower Colo. River Auth. v. Papalote Creek II, LLC.*, 858 F.3d 916, 922 (5th Cir. 2017) (quoting *United Transp. Union v. Foster*, 205 F.3d 851,

857 (5th Cir. 2000)). "A proper case or controversy exists only when at least one plaintiff 'establish[es] that [he or she] ha[s] standing to sue.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Dep't of Com. v. New York*; 588 U.S. 752, 766 (2019)). A plaintiff "must show that [he or] she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy*, 603 U.S. at 57 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted)). "These requirements help ensure that the plaintiff has 'such a personal stake in the outcome of the controversy as to warrant [his or her] invocation of federal-court jurisdiction.'" *Murthy*, 603 U.S. at 57 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

"The plaintiff 'bears the burden of establishing standing as of the time [he or she] brought th[e] lawsuit and maintaining it thereafter.'" *Murthy*, 603 U.S. at 58 (first alterations by this Court; second by *Murthy*) (quoting *Carney v. Adams*, 592 U.S. 53, 59 (2020)). The plaintiff "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Murthy*, 603 U.S. at 58 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 195 (5th Cir.

2012) (quoting *Lujan*, 504 U.S. at 561 (internal quotation marks and alterations omitted)).

Additionally, "standing is not dispensed in gross." *Murthy*, 603 U.S. at 61 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). "That is, 'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy*, 603 U.S. at 61 (quoting *TransUnion*, 594 U.S. at 431). Thus, "for every defendant, there must be at least one plaintiff with standing to seek [relief]." *Murthy*, 603 U.S. at 61; *see also Deep S. Today v. Murrill*, 779 F. Supp. 3d 782, 799-804 (M.D. La. 2025).

Dixie Decoys alleges that Southern Marsh lacks standing to assert false advertising claims because Southern Marsh has failed to allege any concrete harm it suffered as a result of the alleged false advertising. (Doc. 84-1 at 4). Specifically, Dixie Decoys appears to argue that Southern Marsh's claims lack both the injury-in-fact and "fairly traceable" prongs required for Article III standing. (*Id.*). The Court will address each standing prong in turn. Dixie Decoys also argues that Southern Marsh has not satisfied the additional statutory standing requirements for false advertising claims outlined by the Supreme Court in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), though the Court will more appropriately address this argument in its 12(b)(6) analysis.

### 1. Southern Marsh Adequately Alleges an Injury-in-Fact

At the pleading stage, the injury-in-fact inquiry asks whether the plaintiff has alleged a concrete and particularized injury that is actual or imminent, not whether

the plaintiff has proven damages or established statutory proximate cause. *Lujan*, 504 U.S. at 560-61. In *Lexmark*, the Supreme Court concluded that allegations of "lost sales and damage to [the plaintiff's] business reputation" were sufficient to establish Article III standing for a Lanham Act false-advertising claim. 572 U.S. at 125.

Here, Southern Marsh alleges the same general type of commercial and reputational injury. In Count Two, Southern Marsh alleges that Dixie Decoys falsely represents federal registration rights by using the ® symbol on unregistered goods. (Doc. 80 ¶ 48). In the next paragraph of the Complaint, Southern Marsh alleges that "Dixie Decoys' activities have caused and, unless enjoined, will cause irreparable injury to Southern Marsh and the goodwill Southern Marsh has established in its products, brand, and the Southern Marsh Marks over the years and will confuse and deceive consumers." (*Id.* ¶ 49). Furthermore, Southern Marsh alleges it "has suffered and will continue to suffer substantial damage to its brand, reputation, and goodwill," and seeks injunctive relief, actual damages, and Dixie Decoys' profits. (*Id.* ¶ 50).

These allegations sufficiently identify harm to Southern Marsh's own commercial interests, rather than a mere generalized grievance about improper trademark-registration practices. In *Lexmark*, the Court distinguished between injuries to commercial actors and injuries to consumers, explaining that a false-advertising plaintiff must assert injury to "a commercial interest in reputation or sales." 572 U.S. at 131-32. Southern Marsh's alleged harm to its "brand, reputation, and goodwill" falls within that same commercial-injury category for purposes of Article III injury-in-fact. (Doc. 80 ¶ 50); *see Lexmark*, 572 U.S. at 125. Accordingly,

Southern Marsh has satisfied standing under Article III by alleging a concrete and particularized injury.

### 2. Southern Marsh's Alleged Injury is Fairly Traceable to the Challenged Conduct at the Pleading Stage

Traceability requires a "causal connection between the injury and the conduct complained of," meaning the injury must be "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560. This requirement is not identical to the Lanham Act's statutory proximate-cause requirement. See *Lexmark*, 572 U.S. at 134 n.6 ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.").

Dixie Decoys argues that Southern Marsh has not sufficiently alleged "how the allegedly false use of the circle R symbol on Dixie Decoys' clothing [] injured [Southern Marsh]'s sales or business reputation[.]" (Doc. 84-1 at 3-4). In its reply brief, Dixie Decoys further asserts that the injury allegations in Count Two refer broadly to "Dixie Decoys' activities," rather than isolating the precise injury allegedly caused by the false statements. (Doc. 91 at 2-3; Doc. 80 ¶ 49). Dixie Decoys argues that "activities" is a "deceptively ambiguous term" and insufficient to establish proximate cause for the harms alleged in Southern Marsh's false advertising claim. (Doc. 91 at 2-3).

At the jurisdictional stage, the Complaint must only allege that Southern Marsh's injury is fairly traceable to the challenged conduct. Southern Marsh alleges that "Dixie Decoys' activities have caused and, unless enjoined will continue to cause irreparable injury to Southern Marsh and the goodwill Southern Marsh has established in its products, brand, and the Southern Marsh Marks over the years,

and will confuse and deceive consumers." (Doc. 80 ¶ 49). Southern Marsh further alleges that it "has suffered and will continue to suffer substantial damage to its brand, reputation, and goodwill." (*Id.* ¶ 50). Although these paragraphs of the Complaint refer broadly to "Dixie Decoys' activities," the false advertising allegation appears in the paragraph immediately before the injury allegations. Read in context, the Complaint clearly alleges that Dixie Decoys' false registration representations are among the activities causing consumer deception and injury to Southern Marsh's goodwill, brand, and reputation. (*Id.* ¶¶ 48-50). Elsewhere in the Complaint Southern Marsh also alleges diversion of profits and reduced market share. (*Id.* ¶¶ 57, 91). These allegations are sufficient to meet Article III's traceability requirement at the pleading stage for a false advertising claim.

Dixie Decoys proximate-cause argument is better addressed under Rule 12(b)(6) than under Rule 12(b)(1). In *Lexmark*, the Supreme Court first concluded that plaintiff's allegations of lost sales and reputational harm satisfied Article III standing requirements before separately considering whether plaintiff had a cause-of-action under the Lanham Act through a zone-of-interests and proximate cause analysis. 572 U.S. at 125-28. The court ultimately held that a Lanham Act false advertising plaintiff must allege injury to a commercial interest in reputation or sales (zone-of-interests test) and must also show that the injury was proximately caused by the defendant's alleged misrepresentation. *Id.* at 131-34. However, the Court made clear that proximate cause is not an Article III standing requirement and that the

absence of a valid cause of action by itself does not defeat subject-matter jurisdiction. *Id.* at 134 n.6. Thus, this is a statutory-sufficient argument rather than jurisdictional.

**3. Southern Marsh's Requested Relief Would Likely Redress the Injury**

Though not explicitly challenged in Dixie Decoys' Motion, Southern Marsh also satisfies Article III's redressability requirement. Article III requires that the alleged injury be "likely to be redressed by a favorable judicial decision." *Lexmark*, 572 U.S. at 125. Here, Southern Marsh seeks relief directed at the same alleged conduct it identifies as causing injury. In Count Two, Southern Marsh alleges that Dixie Decoys' activities have caused and will continue to cause "irreparable injury to Southern Marsh and the goodwill Southern Marsh has established in its products, brand, and the Southern Marsh Marks," and that Southern Marsh "has suffered and will continue to suffer substantial damage to its brand, reputation, and goodwill." (Doc. 80 ¶¶ 49-50).

To remedy this, Southern Marsh seeks, in part, an injunction prohibiting Dixie Decoys from "directly or indirectly using any false designation of origin, false or misleading description of fact, or false or misleading representation of fact in connection with the sale of Dixie Decoys' products or services," including "any representation that Dixie Decoys ... owns federal trademark registrations it does not own, or that Dixie Decoys owns federal trademark registrations for classes of products for which it does not." (Doc. 80 ¶ 97(c)). This requested remedy directly addresses the challenged conduct and thus is sufficient for redressability under Article III. Southern Marsh also seeks damages and disgorgement of Dixie Decoys' profits, which

would redress any commercial injury Southern Marsh proves. (Doc. 80 at 26-27). Accordingly, Southern Marsh has adequately alleged that its injury would likely be redressed by the requested relief and has otherwise satisfied all of the Article III standing requirements to invoke this Court's subject matter jurisdiction for its false advertising claims.

**B. Failure to State a Claim Under Rule 12(b)(6)**

Dixie Decoys also moves to dismiss Southern Marsh's false advertising claims under both the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and LUTPA. (Doc. 84-1 at 1). Dixie Decoys argues that Southern Marsh has not sufficiently alleged a false advertising claim under the Lanham Act because the Complaint fails to identify a false statement, actual consumer deception, or injury proximately caused by "Dixie Decoys' use of the ® symbol next to the Dixie Decoys Logo and the DIXIE DECOYS word mark." (Doc. 84-1 at 3). Southern Marsh counters that Dixie Decoys used the ® symbol next to the Infringing Duck Logo as well as the DIXIE DECOYS mark "on goods for which Dixie Decoys holds no federal registration," which it argues constitutes a false statement. (Doc. 89 at 2). In its reply, Dixie Decoys agrees that "there is no dispute what the allegedly false statement is—the use of the ® symbol with Dixie Decoys' trademarks." (Doc. 91 at 1). However, Dixie Decoys disagrees that it is false. (*Id.*). Dixie Decoys alleges that Southern Marsh's LUTPA claim fails for similar reasons. The Court will address the sufficiency of each claim in turn.

### 1. Southern Marsh Plausibly Alleges a Lanham Act False-Advertising Claim based on Dixie Decoys' Use of the ® Symbol

A prima facie case of false advertising under the Lanham Act "requires the plaintiff to establish: (1) a false or misleading statement of fact about a product; (2) such statement either deceived, or had the capacity to deceive a substantial segment of potential customers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). In the Motion, Dixie Decoys appears to dispute only the first two elements, arguing that Southern Marsh's false advertising claim fails because 1) the challenged statement – the use of the circle R symbol – is not literally false and 2) because the Complaint "includes no allegation that the alleged misleading use of the circle R symbol has actually deceived consumers" as required under the *Pizza Hut* standard for ambiguous or misleading statements. (Doc. 84-1 at 8). The Court will address each of these arguments in turn.

As explained above, Dixie Decoys' argument that Southern Marsh lacks proximate cause for its false advertising claim is more appropriately addressed in a 12(b)(6) analysis, rather than as a requirement for Article III standing, and thus the Court will also address this argument here. *See Lexmark*, at 134 n.6.

#### i. Whether the statement of fact is false or misleading

The Complaint asserts that Dixie Decoys "misrepresents the nature of its registered trademark rights to the public by using the ® symbol on classes of products

for which it owns no federal trademark registration." (Doc. 80 ¶ 31). Southern Marsh alleges that Dixie Decoys owns U.S. Trademark Registration No. 5,386,013 for the Infringing Duck Logo, but that the registration is limited to "CLASS 28: Waterfowl hunting decoys," and that Dixie Decoys owns no federal registration for clothing, apparel items, or accessories. (*Id.* ¶ 32). Southern Marsh further contends that, despite this limitation, Dixie Decoys represents to the public that it owns a federal registration for the Infringing Duck Logo for clothing items by including the ® symbol next to that logo on clothing items and accessories it sells. (*Id.*). Southern Marsh makes a similar allegation to the DIXIE DECOYS word mark, alleging that Dixie Decoys falsely represents that it owns federally registered trademark rights in the DIXIE DECOYS word mark for apparel items when it does not. (*Id.* ¶¶ 33-34, 48).

To be actionable under the Lanham Act, a challenged statement must be one of fact, meaning it must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Pizza Hut*, 227 F.3d at 496. In its reply brief, Dixie Decoys appears to challenge Southern Marsh's contention that the use of the trademark symbol is an actionable "statement of fact", arguing that "the [Lanham Act] requires the statement [at issue] be about the 'nature, characteristics, quality, or geographic origin' of the goods or services of the [D]efendant," but does not elaborate further and provides no case law support for this proposition. (Doc. 91 at 5).

The ® symbol is a statutory notice associated with federal trademark registration and "makes an affirmative statement that the USPTO has registered the

symbol." *S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*, 829 F.Supp.2d 437, 453 (E.D. La. 2011); *see also* 15 U.S.C. § 1111. Dixie Decoys itself characterizes the symbol as "an indication that the associated mark is federally registered." (Doc. 84-1 at 3). The dispute, then, is not whether it communicates something factual. It clearly does. Instead, the dispute is what the symbol plausibly communicates when used next to a mark on apparel, clothing, and accessories allegedly outside the scope of the asserted trademark registrations. Other courts in this Circuit have found that "appending the ® statement to a mark makes a statement that admits of being adjudged true or false in a way that 'admits of empirical verification.'" *Snow Wizard*, 829 F.Supp.2d at 453. This Court agrees that Dixie Decoys' use of the ® symbol next to marks on goods could be "reasonably interpreted as a statement of objective fact." *Pizza Hut*, 227 F.3d at 496.

Next, the Parties dispute whether the statement at issue – the use of the circle ® symbol on goods that are not included in the trademark registration – is literally false, or simply ambiguous but misleading. This distinction is important because if the challenged statement is literally false, a plaintiff need not produce evidence of actual consumer deception; however, if the statement is ambiguous, or true but misleading, the plaintiff must allege and ultimately succeed in proving actual consumer deception. *Pizza Hut,* 227 F.3d at 497; *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 462 (5th Cir. 2001). Whether a statement is literally false is typically a question of fact, but "courts may consider whether a plaintiff

plausibly alleges that a statement is literally false at the motion-to-dismiss stage." *Dupart v. Roussell,* 497 F.Supp.3d 102, 120-21 (E.D. La. 2020).

Dixie Decoys argues that the statement is not literally false because "the marks at issue are federally registered." (Doc. 91 at 5). Dixie Decoys further argues that federal trademark registration law, 15 U.S.C. § 1111, authorizes use of the ® symbol when "a mark is registered, period," and that the statute "does not limit the authorization of a registrant to use the ® symbol to only the goods in the registration." (*Id.*). In Dixie Decoys' view, the ® symbol "conveys no information whatsoever about the products with which the mark is used" and is instead only "a statement about the registered status of the mark." (*Id.* at 2 n.1). Southern Marsh counters that "the ® symbol is an affirmative assertion that a mark is federally registered for the goods on which it appears," and "[u]sing that symbol on goods outside the scope of a registration is an unambiguous false statement of fact." (Doc. 89 at 7).

Federal trademark registration is not totally untethered from the goods or services identified in the registration, as Dixie Decoys contends. The Supreme Court has recognized that federal trademark registration provides evidence of the owner's exclusive right to use the registered mark in commerce "on or in connection with the goods or services specified in the certificate." *Matal v. Tam*, 582 U.S. 218, 226-27 (2017); *see also Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) ("[R]egistration constitutes prima facie evidence of a protected interest with respect to the goods specified in the registration only."); *Carnival Brand Seafood Co. v. Carnival Brands, Inc.* 187 F.3d 1307, 1310-11 (11th Cir. 1999) ("[A] trademark

owner cannot by the normal expansion of its business extend the use or registration of its mark to distinctly different goods or services not comprehended by its previous use.").

While the statutory language of 15 U.S.C. § 1111 may not explicitly limit a trademark registrant to using the ® symbol on only the goods in its registration, that does not necessarily make its use in connection with other, unregistered goods a true statement of fact. (Doc. 91 at 5). As even Dixie Decoys notes, the law is not clear on whether the use of the trademark symbol on unregistered goods is a false statement. (Doc. 91 at 7). At least one court in this Circuit has contemplated the topic and opined that "unauthorized use of the ® could perhaps form the basis for making a literally false statement." *Snow Wizard,* 829 F.Supp.2d at 453. Thus, given that federal trademark registration rights are goods-specific, this Court similarly finds that Southern Marsh has plausibly alleged that Dixie Decoys' use of the ® symbol next to the challenged marks on goods outside of the registration could be a literally false statement of fact under § 1125(a)(1)(B). (Doc. 80 ¶ 48).

Under the doctrine of literal falsity outlined in *Pizza Hut,* because Southern Marsh has plausibly alleged that Dixie Decoys has made a statement of fact that is literally false, it need not introduce evidence of actual consumer deception. 227 F.3d at 497; *Dupart*, 497 F.Supp.3d at 120-21. However, even if the statement were only ambiguous or true but misleading, Southern Marsh has alleged that consumers were deceived. (Doc. 80 ¶¶ 46, 49 ("Dixie Decoys' activities. . . will confuse and deceive consumers.")). Read in its entirety, the Complaint also outlines Southern Marsh's

theory that Dixie Decoys' use of the ® mark on goods outside of its registration (the alleged false advertisement) misleads the public, causing diverted sales and harm to Southern Marsh's goodwill and reputation. (*See* Doc. 80). As Southern Marsh points out, this is sufficient at the pleading stage. (Doc. 89 at 8). However, under this standard, Southern Marsh would be required to prove actual consumer deception to prevail on the merits.

**ii. Whether the plaintiff has been or is likely to be injured as a result of the statement at issue**

Dixie Decoys also argues that Southern Marsh has not sufficiently pleaded an injury proximately caused by the alleged false advertising. (Doc. 84-1 at 3-4). Dixie Decoys contends that Southern Marsh alleges only "substantial damage to its brand, reputation, and goodwill" generally, and that "nowhere does Southern Marsh allege that any such harm was caused by the alleged false statements." (*Id.* at 3). Dixie Decoys further argues that Southern Marsh uses the word "activities" too vaguely and does not explicitly allege that Dixie Decoys' "purportedly false use of the ® symbol somehow adversely affected Southern Marsh's sales or business reputation." (Doc. 91 at 3).

Here is where *Lexmark*'s zone-of-interests and proximate cause tests are applicable. To meet the applicable pleading standards, a false-advertising plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at

133. Though a slightly more stringent standard than what is required for Article III standing, the Court employs similar reasoning to find that Southern Marsh meets these additional *statutory* standing requirements.

First, although Dixie Decoys does not appear to challenge whether Southern Marsh falls sufficiently within the zone-of-interests protected by the Lanham Act to sue under it, the Court finds this test easily satisfied in this case. Similar to the plaintiff in *Lexmark*, Southern Marsh is a "person engaged in commerce within the control of Congress whose position in the marketplace has [allegedly] been damaged by [Defendant]'s false advertising." *Id.* at 137 (internal quotation marks omitted).

Regarding proximate cause, Southern Marsh alleges that Dixie Decoys falsely represents federal trademark registrations it does not own by using the ® symbol next to the Infringing Duck Logo and DIXIE DECOYS mark for product classes outside of its registration. (Doc. 80 ¶ 48). The paragraph that immediately follows alleges that Dixie Decoys' "activities have caused and, unless enjoined, will continue to cause irreparable injury to Southern Marsh and the goodwill Southern Marsh has established in its products, brand, and the Southern Marsh Marks over the years, and will confuse and deceive consumers." (*Id.* ¶ 49). Southern Marsh then alleges that it "has suffered and will continue to suffer substantial damage to its brand, reputation, and goodwill." (*Id.* ¶ 50). Read in context, it is clear Southern Marsh is alleging that Dixie Decoys' false advertising is among the challenged activities causing these "economic or reputational injur[ies]". (*Id.*); *Lexmark*, 572 U.S. at 133. Elsewhere in the Complaint, Southern Marsh alleges diversion of profits flowing from

Dixie Decoys' conduct. (Doc. 80 ¶¶ 57, 91). "[D]iversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising." *Lexmark,* 572 U.S. at 138. Moreover, in *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2016 WL 6393503, at *5 (N.D. Cal. Oct. 28, 2016), the court found the proximate-cause requirement satisfied when a party alleged a tarnished reputation with customers because of an association with the false advertiser's product, just as Southern Marsh has done here. (Doc. 80 ¶ 49); *see also Clorox Co. v. Reckitt Benckiser Grp. PLC,* 398 F. Supp. 3d 623, 645 (N.D. Cal. 2019) (finding allegations of diversion of sales and damage to goodwill and reputation due to alleged false advertising sufficient to establish proximate cause).

Taken together, this sufficiently connects Dixie Decoys' alleged "deception of consumers" to Southern Marsh's "economic or reputational injury" to satisfy the proximate cause test from *Lexmark.* 572 U.S. at 133. Because Rule 12(b)(6) requires plausibility rather than proof, the issue of whether Southern Marsh can prove this causal connection with additional evidence is a question for a later stage of this litigation. *See Openwave Messaging,* 2016 WL 6393503, at *5 ("[D]iscovery may provide these details.").

In sum, Southern Marsh has plausibly stated a Lanham Act false-advertising claim based on Dixie Decoys' use of the ® symbol next to the challenged marks on goods outside of its trademark registration. Thus, Dixie Decoys' Rule 12(b)(6) motion is denied as to Southern Marsh's § 1125(a)(1)(B) false advertising claim.

### 2. Southern Marsh Plausibly Alleges a LUTPA Claim

Dixie Decoys also seeks dismissal of Southern Marsh's LUTPA claim, Count Six of the Complaint, to the extent it is premised on the same false advertising allegations. Dixie Decoys argues that Southern Marsh's LUTPA claim is "based on the same allegations of 'Symbol Misuse' as its § 1125(a) false advertising claims" and therefore "fail[s] to state a claim for the same reason." (Doc. 84-1 at 9). Southern Marsh responds that Dixie Decoys adopts the same arguments against the LUTPA claim as against the Lanham Act claims, and that those arguments fail for the same reasons. (Doc. 89 at 5). The Parties agree that a claim for false advertising under LUTPA is governed by the same standards as under the Lanham Act. (Doc. 84-1 at 9; Doc. 89 at 8); *Snow Wizard,* 829 F.Supp.2d at 437, n.9.

In Count Six, Southern Marsh reiterates its Lanham Act false advertising allegations, adding that Dixie Decoys' conduct "violates established public policy and is immoral, unethical, oppressive, unscrupulous, substantially injurious to consumers, and deceptive." (Doc. 80 ¶¶ 74-75). Southern Marsh alleges that Dixie Decoys exploited the reputation and goodwill associated with the Southern Marsh Marks and gained a financial benefit for itself, causing harm to Southern Marsh's brand, goodwill, and reputation. (*Id.* ¶ 76). Southern Marsh also seeks actual damages stemming from harm to its brand, goodwill, and reputation caused by Dixie Decoys' alleged unfair methods of competition and unfair or deceptive acts or practices. (*Id.* ¶ 77). Dixie Decoys identifies no independent pleading defect in the LUTPA false advertising claims beyond the previously asserted insufficiencies. (Doc.

84-1 at 9). Because Southern Marsh has plausibly alleged that Dixie Decoys used the ® symbol in a false or misleading manner and that the challenged conduct caused harm to Southern Marsh's brand, goodwill, and reputation, Southern Marsh has plausibly stated a LUTPA claim in addition to a Lanham Act claim, based on the same alleged false advertising.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Dixie Decoys' **Motion to Dismiss the "Symbol Misuse" Claims Asserted in Plaintiff's Second Amended Complaint (Doc. 84)** is **DENIED.**

Baton Rouge, Louisiana, this 19th day of August, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**