UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SOUTHERN MARSH COLLECTION, LLC | CIVIL ACTION

VERSUS

DIXIE DECOYS, LLC | NO. 24-00905-BAJ-EWD

## RULING AND ORDER

Before the Court is Plaintiff Southern Marsh, LLC's ("Southern Marsh") **Motion to Dismiss Counterclaim With Prejudice, and Alternative Motion to Strike Paragraphs 144-178 and 184-187 of the Counterclaim (Doc. 90)**. Defendant Dixie Decoys, LLC ("Dixie Decoys") opposes the Motion. (Doc. 92). Defendant filed a Reply Brief. (Doc. 93). For the reasons stated herein, Plaintiff's Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

This is a trademark and copyright infringement case, the relevant facts of which were outlined in detail in the Court's recent ruling on Defendant's Motion to Dismiss. (*See* Doc. 107). In short, since 2008 Southern Marsh has been designing and selling a variety of outdoor apparel and accessories displaying its duck-style logo and phrase "PRESERVE THE TRADITION," for which it owns registered trademarks. (Doc. 80 ¶¶ 6-15). Among other things, Southern Marsh alleges that Dixie Decoys markets, distributes and sells products using a registered trademark that closely resembles Southern Marsh's registered trademarks in a manner that is likely to

cause consumer confusion. (*Id.* ¶ 17). Southern Marsh initiated this litigation against Dixie Decoys alleging trademark infringement, unfair trade practices, trademark dilution, and copyright infringement. (Doc. 80 at 16-24). Dixie Decoys asserted a Counterclaim against Southern Marsh, alleging that Southern Marsh has engaged in unfair trade practices in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. § 51:1409, and seeks dismissal of the Complaint, a declaratory judgment, money damages, and attorney fees. (Doc. 85 at 25-28). Specifically, Dixie Decoys alleges Southern Marsh "has engaged in a pattern of [sic] practice of instituting objectively baseless lawsuits against competitors for the purpose of harassing, burdening, or bullying those competitors out of the market" and that Southern Marsh "instituted the present suit without a good faith belief that Dixie Decoys' mark infringes the Southern Marsh marks." (*Id.* ¶¶ 184, 190).

Southern Marsh now moves to dismiss Dixie Decoys' Counterclaim pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of standing, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 90). Alternatively, Southern Marsh asks the Court to strike paragraphs 144-178 and 184-187 of the Counterclaim as "improper . . . immaterial[,] and impertinent." (*Id.* at 1).

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Products Liab. Litig,* 688 F.3d 281, 286 (5th Cir. 2012). Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when

the court lacks the statutory or constitutional power to adjudicate the claim." *Id.* (quoting *Home Builders Assn. Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) attack before addressing any challenge on the merits of the claims. *Id.*

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). That standard seeks to determine whether "a complaint ... contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At 678 (citing *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (holding that a court ruling on a Rule 12(b)(1) motion may evaluate

"(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts").

## III. DISCUSSION

Southern Marsh seeks to dismiss Dixie Decoys' Counterclaim for lack of standing, arguing that Dixie Decoys has only alleged harm on behalf of third parties and conjectural injury based on the future outcome of litigation. (Doc. 90-1 at 3). Southern Marsh further argues that Dixie Decoys fails to state a claim for which relief can be granted because "Southern Marsh's exercise of its juridical right . . . is not grounds for a LUTPA claim." (*Id.*). The Court will address each argument in turn.

### A. Dixie Decoys Sufficiently Pleads Article III Standing

Southern Marsh argues that Dixie Decoys lacks standing to assert its Counterclaim because the loss alleged "is a generalized allegation of harm based on Southern Marsh's lawsuits against multiple third parties" and that "such a loss is not recognized as a legal injury to confer standing." (Doc. 90-1 at 4). Southern Marsh further contends that Dixie Decoys "does not plead any ascertainable loss of money or property stemming from Southern Marsh's litigation with these other, unrelated parties." (*Id.*). Dixie Decoys counters that "Southern Marsh has engaged in a long running scheme to assert unfounded lawsuits against its competitors to obtain a scope of exclusivity for its waterfowl themed logo well beyond the legal reach of its state and federal trademarks," and "that it is a victim of this scheme," thereby allegedly conferring standing. (Doc. 92 at 2).

To establish standing, a plaintiff (or, in this case, counterclaimant) "must show that [it] has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy*, 603 U.S. at 57 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted)). "These requirements help ensure that the plaintiff has 'such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction.'" *Murthy*, 603 U.S. at 57 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Further, a "plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Here, the only injuries Dixie Decoys alleges in the "Factual Allegations" section of its Counterclaim are to third parties. (Doc. 85 ¶¶ 144-180). To the extent that any of Dixie Decoys claims rest on these injuries, it lacks standing to bring those claims. The first and only reference to Dixie Decoys' own injuries appears in paragraph 191 of the Counterclaim, under "Count 1." (Doc. 85 ¶ 191). There, Dixie Decoys alleges that "[b]y [its] actions, Southern Marsh has caused harm to Dixie Decoys[], including harm to Dixie Decoys[] brand, goodwill, and reputation." (*Id.*). As discussed in the Court's most recent Ruling in this case, these types of injuries *could* establish injury-in-fact for the purposes of Article III standing. (Doc. 107 at 8-9). However, traceability of the alleged injuries to the challenged action must also be shown. The only actions by Southern Marsh challenged in the Counterclaim are the filing of the instant

trademark infringement suit against Dixie Decoys (Doc. 85 ¶¶ 190-191) and the filing of other trademark litigation involving third parties not involved here, for which the court has already determined Dixie Decoys does not have standing. (*Id.* ¶¶ 184-189). While it is conceivable that the filing of a trademark infringement suit could result in harm to a defendant-company's reputation, it is not clear to the Court, based on the facts alleged in the Counterclaim, how exactly that is so in this case.

Still, the Court must draw all reasonable inferences in favor of the counterclaimant at this stage. Accordingly, the Court finds that Dixie Decoys has alleged an actual injury – harm to its brand, goodwill, and reputation – that is fairly traceable to Southern Marsh's actions – the filing of a trademark infringement lawsuit. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 195 (5th Cir. 2012) (quoting *Lujan*, 504 U.S. at 561 (internal quotation marks and alterations omitted)). However, as detailed in the Court's last Ruling in this matter (Doc. 107), the question of whether standing exists for Article III purposes is a separate inquiry from whether standing exists for purposes of bringing a statutory claim. Dixie Decoys' Article III standing is of little importance here where it is clear, as the Court will discuss below, that it does not have statutory standing.

**B. Dixie Decoys Fails to State a LUTPA Claim**

Southern Marsh also moves to dismiss Dixie Decoys' Counterclaim for failure to state a claim upon which relief can be granted. (Doc. 90-1 at 4). Southern Marsh argues that Dixie Decoys fails to state a claim because "the act of enforcing trademark rights . . . is not an unfair trade practice" and "a trademark infringement claim is not a cognizable LUTPA violation." (*Id.* at 8, 9). Southern Marsh further contends that Dixie Decoys' Counterclaim fails because "[t]here are no facts suggesting that Southern Marsh's claims were baseless, brought in bad faith, or dismissed on the merits" and "it does not even particularize the alleged brand, goodwill, or reputation harm Dixie Decoys has sustained." (*Id.* at 10).

In response, Dixie Decoys acknowledges that no courts in Louisiana have interpreted LUTPA to apply to the "malicious litigation" claims it makes in the instant suit. (Doc. 92 at 7). Despite this, Dixie Decoys argues that this Court should look to other states' unfair trade practice laws to expand the reach of LUTPA in this "question of first impression," in part because "filing lawsuit after lawsuit, knowing full well that the accused infringers are not infringing is a restraint of trade" and, it argues, "one of the purposes of LUTPA is to curb business practices that constitute an unfair restraint of trade." (*Id.* at 8-10). Dixie Decoys also contends that it has alleged sufficient facts to support its claim that Southern Marsh's third-party lawsuits are "unfounded", because the Counterclaim includes side by side images of the allegedly dissimilar trademarks from some of the suits and concludes that "no one could reasonably confuse the [] logos." (*Id.* at 11). Southern Marsh responds that

Dixie Decoys' characterization of its previous trademark infringement suits as "baseless" is an unsupported legal conclusion that should be disregarded, noting that it lost none of these third-party lawsuits and that none were found by courts to be baseless. (Doc. 93 at 5-7).

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" La. Stat. Ann. § 51:1405. "To recover, the plaintiff must prove some element of fraud, misrepresentation, deception or other unethical conduct.'" *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (citation modified). "It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1059.

Courts have determined that "the range of prohibited practices under LUTPA is extremely narrow." *Id.* "Therefore, only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." *Id.* at 1055. In establishing a LUTPA claim, "the plaintiff must show the alleged conduct offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* at 1059 (citation modified). However, "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." *Id.* at 1060 (citing *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993)).

Particularly relevant to this case, "Louisiana courts have held that filing a lawsuit, even a meritless one, is not an unfair trade practice under LUTPA." *Carbon Six Barrels, LLC v. Proof Rsch., Inc.*, No. 22-CV-90, 2022 WL 16727127, at *8 (M.D. La. Nov. 4, 2022) (Dick, C.J.), *aff'd sub nom. Carbon Six Barrels, L.L.C. v. Proof Rsch., Inc.*, 83 F.4th 320 (5th Cir. 2023). This Court finds no reason to diverge from this precedent in the instant suit despite Dixie Decoys attempts to distinguish the cases. In *Carbon Six Barrels,* a plaintiff similarly filed a trademark infringement suit against a competitor that the competitor alleged was a false accusation. 2022 WL 16727127, at *8. Plaintiff's trademark was ultimately cancelled, but the Fifth Circuit affirmed the district court's dismissal of defendant's LUTPA counterclaim, in part because "[w]hen [plaintiff] initiated the trademark litigation, it was at least arguable that it possessed cognizable claims." *Carbon Six Barrels, L.L.C. v. Proof Rsch., Inc.,* 83 F.4th 320, 327 (5th Cir. 2023). Here, it is not only *arguable* that Southern Marsh has cognizable claims, but this Court recently ruled that it does. (*See* Doc. 107). It would be a departure from precedent in this Circuit to find that Southern Marsh's instant trademark infringement suit is in violation of LUTPA because it "falls short of the types of egregious behavior necessary to support a LUTPA claim." *Carbon Six Barrels,* 83 F.4th at 327.

Similarly, in *Nola Spice Designs, LLC v. Haydel Enters. Inc.,* a defendant-competitor lodged a LUTPA counterclaim in response to a trademark infringement suit brought against it, alleging monopolistic behavior and bullying of smaller businesses. 969 F. Supp. 2d 688, 700 (E.D. La. 2013), *aff'd sub nom. Nola Spice*

*Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527 (5th Cir. 2015). However, the court held that the plaintiff "was simply engaging in normal business practice and taking appropriate and ordinary measures to protect what it believed were legally protectible marks and copyrights." *Id.* So too here, Southern Marsh appears to be taking "appropriate and ordinary measures" to protect its marks. *Id.*; *see also Ring St., LLC v. Cypress Connects LLC*, No. CV 23-1486, 2023 WL 6121792 (E.D. La. Sept. 19, 2023) (finding that a plaintiff had pleaded cognizable legal claims and filing of lawsuit did not rise to level of LUTPA violation despite defendant's argument "that the bad faith filing of litigation, brought to harass, oppress, or destroy a business competitor, is actionable under LUTPA"); *Newton v. Brenan*, 14-423 (La. App. 5 Cir. 12/16/14), 166 So. 3d 285 (finding a plaintiff's effort to exercise his juridical rights was not an unfair trade practice under LUTPA because there were arguably cognizable claims).

Dixie Decoys alleges that "Southern Marsh instituted the present suit without a good faith belief that Dixie Decoys' mark infringes the Southern Marsh marks," but this Court has already ruled that at least some claims of the suit pass muster in the pleading stage. (Doc. 85 ¶ 190; Doc. 107). Dixie Decoys further alleges "Southern Marsh instituted the present suit for the purpose of harassing, bullying, and/or vexing Dixie Decoys into agreeing to forego use of a duck logo in conjunction with Dixie Decoys' products." (Doc. 85 ¶ 191). The Court is hesitant to opine on Southern Marsh's intentions in filing the suit, but it is evident from the pleadings that at least one of the likely motives is to protect its trademarks, which is a valid legal cause of

action Southern Marsh has a right, and likely a duty, to undertake. (Doc. 90-1 at 7-8); *see Oreck Holdings, LLC v. Euro-Pro Corp.*, 20007 WL 9778024, at *3 (E.D. La. Jan. 24, 2007) ("[a] trademark holder is required to police his mark.").

Putting aside that the filing of a trademark infringement suit, even a losing or meritless one, almost never gives rise to a LUTPA violation, Dixie Decoys' claim also fails for the more basic reason that its allegations are conclusory and unsupported. The remainder of Claim One deals with other trademark infringement suits filed against third parties, which Dixie Decoys describes as "objectively baseless." (Doc. 85 ¶ 184). The Court has already found that Dixie Decoys lacks standing to bring claims based on these alleged third-party injuries and cannot rely solely on allegations of baseless lawsuits filed against other competitors to sustain its own claim. However, Dixie Decoys contends that these allegations are relevant facts to support its claim that Dixie Decoys is "one of the latest victims" in "a long running scheme [by Southern Marsh] to assert unfounded lawsuits against its competitors to obtain a scope of exclusivity for its waterfowl themed logo well beyond the legal reach of its state and federal trademarks." (Doc. 92 at 1-2).

While the Court must accept all well-pleaded factual allegations as true at the motion to dismiss stage, the Court is not obligated to blindly accept "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir.1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir.1996). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Dixie Decoys appears to support its claim of "objectively baseless" and "unfounded" lawsuits by simply relying on its own interpretation of the alleged similarities or dissimilarities between Southern Marsh's trademarks and those of the third parties it has sued for trademark infringement. (Doc. 92 at 10-12). However, whether a lawsuit, especially one involving third parties, is baseless or unfounded is not for Dixie Decoys to decide. *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 309 (N.D. Ohio 2021) ("The issue of whether a lawsuit is objectively baseless is a question of law for the Court"). Tellingly, Dixie Decoys does not expound on the outcomes of any of these suits and does not allege that any of them were dismissed as frivolous or identify any misconduct on the part of Southern Marsh. In fact, Southern Marsh represents that none of the referenced lawsuits resulted in any adverse merit rulings against it. (Doc. 90-1 at 13). Thus, the Court must disregard this allegation in paragraph 184 of the Counterclaim. (Doc. 85 ¶ 184).

Dixie Decoys further argues that "[f]iling lawsuit after lawsuit, knowing full well that the accused infringers are not infringing[,] is a restraint of trade." (Doc. 92 at 10). That may be true, but it can hardly be said that Southern Marsh "knew full well that the accused infringers were not infringing." (*Id.*). Again, none of the referenced third-party lawsuits are alleged to have been found without merit. And even if *some* of those lawsuits had been found baseless, the instant trademark lawsuit involving Dixie Decoys is not. Thus, even if Southern Marsh were engaged in a scheme of filing baseless lawsuits against competitors, Dixie Decoys cannot plausibly allege that the instant lawsuit against it is a part of said scheme.

While not dispositive in this case, it is also worth noting that a LUTPA plaintiff must also allege "an ascertainable loss of money or moveable property," which Dixie Decoys has not done. La. Stat. Ann. § 51:1405; (*See* Doc. 85). It has pled only general harm to its "brand, goodwill, and reputation," which may suffice as injuries for Article III purposes as discussed above, but not under LUTPA. (*Id.* ¶ 192). Dixie Decoys has alleged no loss of profits or other concrete financial loss anywhere in its Counterclaim. However, even were Dixie Decoys to cure this pleading deficiency, it would still fail to state a claim because the conduct alleged does not give rise to a LUTPA claim as discussed above.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff Southern Marsh's Dixie Decoys' **Motion to Dismiss Counterclaim With Prejudice, and Alternative Motion to Strike Paragraphs 144-178 and 184-187 of the Counterclaim (Doc. 90)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Dixie Decoys' LUTPA Counterclaim is **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 24th day of August, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**